**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____
:
JERRY SAPP,                      :
                                 :
            Petitioner,          :   Civil Action No. 07-4440 (NLH)
                                 :
      v.                         :      **O P I N I O N**
                                 :
MICHELLE R. RICCI, et al.,       :
                                 :
            Respondents.         :
_____

**APPEARANCES:**

Jerry Sapp, <u>Pro Se</u>              Johanna Barba Jones
#435123                          Office of the Attorney General
New Jersey State Prison          R.J. Hughes Justice Complex
P.O. Box 861                     25 Market Street, P.O. Box 086
Trenton, NJ 08625                Trenton, NJ 08625
                                 Attorney for Respondents

**HILLMAN**, District Judge

    Petitioner Jerry Sapp, a prisoner currently confined at New

Jersey State Prison in Trenton, New Jersey, has submitted a

petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  The respondents are Superintendent Michelle R. Ricci and

the New Jersey Attorney General.

    For the reasons stated herein, the Petition must be denied.

**BACKGROUND**

1.   <u>Factual Background</u>

As stated in the opinion of the Superior Court of New

Jersey, Appellate Division:[1]

> According to the evidence adduced at trial, on the
> evening of April 14, 2001, Paul and Marlene
> Marcinkowski, and Loretta Madrigale, Marlene's mother,
> had left a casino in Atlantic City and were entering
> their automobile in the casino garage, when defendant
> approached and grabbed Marlene, placing his left hand
> over her mouth.  Defendant pushed Marlene into the
> vehicle that the others had already entered, holding a
> knife to her throat with enough force to leave a thin
> red line of blood.  Once inside the vehicle, defendant
> said, "Give me your fucking money or I'm going to kill
> her."  As Marlene struggled to push the knife away,
> defendant threatened that he had a gun in his pocket
> and would "blow [her] fucking head off."  Fearing for
> her life, Marlene let go of the knife.

> In response, Paul gave defendant approximately
> $150 to $200.  Marlene and Loretta stated that Paul had
> all their money.  Defendant then warned, "if you tell
> anybody I'm going to come back and find you and kill
> all of you and blow your fucking heads off," and exited
> the vehicle and fled the area.

> Defendant was soon apprehended and eventually
> indicted.

(Respondents' Appendix ("Ra") 8; Opinion of the Superior Court of

New Jersey, Appellate Division, <u>State v. Sapp</u>, A-3230-02T4 (Jan.

14, 2005), at pp. 1-2).

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

2.  <u>Procedural Background</u>

On August 9, 2001, an Atlantic County Grand Jury returned an indictment against Petitioner, charging him with first-degree robbery, contrary to <u>N.J.S.A.</u> 2C:15-1 (counts one through three); third-degree terroristic threats, contrary to <u>N.J.S.A.</u> 2C:12-3b (counts four through six); third-degree possession of a weapon for an unlawful purpose, contrary to <u>N.J.S.A.</u> 2C:39-4d (count seven); fourth-degree unlawful possession of a weapon, contrary to <u>N.J.S.A.</u> 2C:39-5d (count eight); third-degree hindering apprehension, contrary to <u>N.J.S.A.</u> 2C:29-3b(1) (count nine); and fourth-degree possession of a weapon by a convicted person, <u>N.J.S.A.</u> 2C:39-7 (count ten).

From June 4 through 6, 2002, Petitioner was tried by jury and was found guilty of counts one through eight.  The court granted the state's motion to dismiss count nine.  He was sentenced on August 2, 2002 to an aggregate sentence of 70 years, with a 42 year period of parole ineligibility, pursuant to an extended term.  At the time of sentencing, the court granted the state's motion to dismiss count ten.

Petitioner appealed the conviction and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  On January 14, 2005, the Appellate Division affirmed Petitioner's convictions; however, they reversed and remanded for

3

an amended judgment of conviction due to a sentencing error.  The Supreme Court denied certification on March 10, 2005.

In October of 2005, Petitioner filed a state petition for post-conviction relief ("PCR").  Counsel was appointed, and the trial court denied relief on September 14, 2006, without an evidentiary hearing.  On December 13, 2007, Petitioner filed a notice of appeal to the Appellate Division on the PCR motion. That appeal is pending.

Meanwhile, on September 11, 2007, this Court received Petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.  On September 28, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  An order to answer was issued and Respondents filed an answer to the petition and state court record on January 22, 2008, with supplementary documents filed on February 8, 2008.

Petitioner asserts the following claims in this habeas petition:

1.   The trial court erred by providing a magnifying glass to the jury during its deliberations.

2.   The victims' out of court identifications were suggestive.

3.   The photograph of defendant was characterized as a "mug shot" style photo.

4.   The trial judge failed to instruct the jury on a lesser charge.

4

(Petition, ¶ 12).  It appears that grounds one, two and three have been exhausted in the state courts.  Ground four has not been exhausted.  Nonetheless, this Court finds that this claim is clearly meritless.  Thus, the petition will be denied.[2]

## DISCUSSION

**A.   Standards Governing Petitioner's Claims.**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2]  Although a petition for writ of habeas corpus may not be granted if petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409. In determining whether the state court's

application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. See Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000); see also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See

Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## B.  **Claims of Trial Court Error (Grounds 1 and 3).**

In Ground One of his Petition, Petitioner argues that the trial court violated his rights by providing the jury with a magnifying glass during deliberations.

According to the record, during deliberations, the jury asked for a magnifying glass.  The trial judge heard from counsel regarding the request and ruled, in pertinent part:

> The jury has asked for something to aid them in looking at the evidence that is already in evidence.  It doesn't change the evidence.  It doesn't make new evidence.  It's there and if they are asking for something perhaps to give them a clearer picture of that, and since this is a search for the truth to see that justice is done, I don't think that they should be precluded.  It very well may be a benefit to the defendant.  They may- They may hold a magnifying glass to see if something is there and if it's not there, that may be an aid to the defendant.  I don't know. But I don't equate it to new evidence.  I equate it to a[n] aid to look at whatever is already in evidence or to enhance or to amplify it or to make it clearer so that a final determination can be made.  And for those reasons, I'll- I'll give them the magnifying glass.

(Ra 6T at p. 81).   The Appellate Division, citing New Jersey precedential case law, found no error in the trial judge's decision.  (Ra 8, Appellate Division Opinion, pp. 6-7).

In Ground Three of his petition, Petitioner argues he is entitled to habeas relief because a victim testified, during cross examination by defense counsel, that sometime prior to trial, he met with the prosecutor's office and was shown photographs of the defendant, which the victim characterized as "a mug-shot-style photo."  (Ra 4T at pp. 144-45).  Petitioner argues that this was highly prejudicial, and capable of producing an unjust result, and that the trial judge should have offered a curative instruction.

The Appellate Division analyzed this claim on direct appeal and found:

> In addition, defendant complains that the prosecutor showed Marlene and Paul Marcinkowski photographs of him in preparation for their trial testimony.  As a result, defendant argues that their later in-court identification was impermissibly suggestive and unreliable, and warranted the granting of his motion for a new trial.  We reject this contention.  Both the in-court identification and the surrounding circumstances, including the examination of defendant's photographs in advance, were matters that the jury could weigh in determining whether defendant was the perpetrator of these crimes.  Defendant had a full and fair opportunity, which he took advantage of, to argue the unreliability and suggestiveness of this identification to the jury.  We find no merit in defendant's argument that there was a "manifest denial of justice" in the admission of this evidence and we reject his contention that a new trial should have been granted.

(Ra 8, Appellate Division Opinion at pp. 7-8).

Under federal law, it is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  See Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).

A review of the record reveals that the trial court's decision to allow the jury to have a magnifying glass was not so pervasive as to have denied Petitioner a fair trial.  Federal cases which have examined this issue have likewise determined that the jury's use of a magnifying glass, whether known or unknown to the trial court, does not constitute reversal.  See,

e.g., United States v. George, 56 F.3d 1078, 1083-84 (9th Cir. 1995)(finding that jurors' use of magnifying glass without court approval did not constitute extrinsic evidence and no new evidence resulted from use of glass), cert. denied, 522 U.S. 1138 (1998); United States v. Miranda, 986 F.2d 1283, 1286 (9th Cir.)(jurors used magnifying glass without court approval; court found no juror misconduct, and use of magnifying glass was not extrinsic evidence), cert. denied, 508 U.S. 929 (1993); United States v. Brewer, 783 F.2d 841, 843 (9th Cir.)(jury used magnifying glass without court approval; court held: "We are unable to see how the use of the magnifying glass to view photographs differs from the use of corrective eyeglasses by jurors."), cert. denied, 479 U.S. 831 (1986); United States v. Young, 814 F.2d 392, 396 (7th Cir.)(trial judge permitted jury to use magnifying glass without instructing on permissible uses of magnifying glass; held "by providing the jury with a magnifying glass, the district court permitted the jury to make a more critical examination of the exhibits introduced at trial," and no evidence was provided that jury used glass improperly), cert. denied, 484 U.S. 838 (1987); Cooks v. Hickman, 48 Fed. Appx. 272, 273, 2002 WL 31320282 (9th Cir. Oct. 15, 2002) (unpubl.) (petitioner not entitled to habeas relief under § 2254 based on jury's use of magnifying glass to look at photographic evidence as this did not constitute jury misconduct); United States v.

Gomez, 24 F.3d 250, 1994 WL 168255 at *3 (9th Cir. May 4,
1994)(unpubl.)(holding: "Whether the jury examined duly admitted
evidence with their naked eyes, through spectacles, or through a
magnifying glass is immaterial.  What they saw was not extrinsic
evidence.").

     Nor did the victim's testimony concerning a "mug shot style
photo" result in a fundamentally unfair trial for Petitioner to
violate his due process rights.  The testimony concerning the
"mug shot style photo" was elicited by defense counsel during
cross examination of one of the victims.  It was not objected to,
and in fact, defense counsel used the term to support the
defense's theory of misidentification.  During closing arguments,
defense counsel honed in on the weakness of the state's case,
saying: "And then in preparation for trial, each one of them is
shown a picture.  A picture of what?  They're shown this picture
or something – of the mug shot taken of my client after he was
arrested and I think a second picture, but of my client as well."
Defense counsel questioned why they would need to view pictures
prior to trial if, as the victims testified, they could never
forget the face of the person that committed these crimes.  (Ra
6T at p. 12).

     In this case, Petitioner attempted to present a defense of
misidentification.  The jury chose to find the state's witnesses
credible, and convict Petitioner.  The jury's rejection of

Petitioner's defense does not constitute a denial of fundamental fairness during the course of his trial.  Nor does the use of the magnifying glass or term "mug shot style photo" introduced by the victim and reiterated during closing remarks by defense counsel. As such, this habeas claim fails.

## C.  Claim Regarding Out of Court Identification (Ground 2).

Petitioner argues that the show-up identification by the victims was not reliable, and that the trial court erred in ruling admissible the out of court identification.  Petitioner argues that his being handcuffed and exiting from the police car was impermissibly suggestive and resulted in a very substantial likelihood of irreparable misidentification.

For background purposes, the Court notes that Petitioner was subject to a "show-up" identification, in which a suspect is apprehended promptly after a crime and brought to the victim for identification.  Show-up identifications allow identifications while the witness' memory is fresh; further, the suspect has the same appearance as at the time of the crime, and suspects who are not positively identified may be released immediately.  See Green v. City of Paterson, 971 F. Supp. 891, 904 (D.N.J. 1997) (citations omitted).  Although a show-up identification generally is considered more suggestive than a line-up, see Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987), a number of Circuit

13

Courts of Appeals, including the Court of Appeals for the Third

Circuit, have held show-up identifications admissible.

> Immediate show-ups can serve ... important interests.
> For example, show-ups allow identification before the
> suspect has altered his appearance and while the
> witness' memory is fresh.  ...  In our view, such
> considerations will justify a show-up in a limited
> number of circumstances, such as where the police
> apprehend a person immediately after the crime and in
> close proximity to the scene.

United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996)

(citations omitted).  See also United States v. Watson, 76 F.3d

4, 6 (1st Cir.), cert. denied, 517 U.S. 1239 (1996); Johnson v.

Dugger, 817 F.2d 726, 729 (11th Cir. 1987); United States v.

Gaines, 450 F.2d 186, 197 (3d Cir. 1971) (holding that a show-up

conducted without counsel was justified by "the fact that the

eye-witness might have quickly departed, and the considerations

of reliability inhering in an immediate identification"), cert.

denied, 405 U.S. 927 (1972).

Even if an identification procedure is suggestive, an

identification may still be reliable.  See Green, 971 F. Supp. At

904 (citing Neil v. Biggers, 409 U.S. 188, 199 (1972))(other

citation omitted).  An identification becomes unreliable "when

that suggestibility in confrontation reaches impermissible or

unfair limits."  Id. (citation omitted).

A two-prong test is utilized to determine the trial

admissibility of an eyewitness identification.  First, a court

must decide whether the procedure in question was, in fact,

impermissibly suggestive.  If it is so determined, the court must decide whether the suggestive procedure resulted in a substantial likelihood of misidentification.  See Stovall v. Denno, 388 U.S. 293 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987); Simmons v. United States, 390 U.S. 377 (1968); Neil v. Biggers, 409 U.S. 188 (1972); Manson v. Braithwaite, 432 U.S. 98 (1977).  Due Process is not violated if "a suggestive and unnecessary identification procedure . . . possesses sufficient aspects of reliability," as reliability is the "linchpin in determining the admissibility of identification testimony."  Id. (citing Manson, 432 U.S. at 106).

In United States v. Mathis, the Court of Appeals for the Third Circuit stated that:

> [The] likelihood of misidentification should be
> measured by a totality of circumstances including:  the
> witness's initial opportunity to view the suspect at
> the crime scene and degree of attention at that time,
> the witness's level of certainty in the disputed
> identification, the length of time between initial
> viewing and disputed identification, and the accuracy
> of any intervening description of the suspect occurring
> between those two events.

Mathis, 264 F.3d 321, 330 (3d Cir. 2001), cert. denied, 535 U.S. 908 (2002)(citing Biggers, 409 U.S. at 199-200).  New Jersey adopted the Biggers and Manson standards in State v. Madison, 109 N.J. 223 (1988).

In this case, a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967) was held prior to trial.  Testimony was taken

from Detective David Smith, of the Atlantic City Police Department, who responded to and investigated the incident. The trial court, applying <u>Wade</u>, found:

> In the totality of the circumstance test, . . . you look at the totality; i.e., the opportunity of the witness to view the criminal. In this particular incident, it's alleged that the assailant was in the car holding a gun– holding a knife to the throat of– of one of the victims and was in the car for a short period of time in – in any event. The witness's degree of attention I would – I would indicate that that would probably tend to get one's attention pretty good. The accuracy of the witness's prior description, the prior description of all three individuals, and the officer testified he spoke with them all separately, matched verbatim the identification given as far as the – the hair, the shirt, and the area within which the – the area within which the defendant was apprehended was in the immediate area or not far from the area where the incident allegedly occurred. The level of certainty demonstrated at the time of the confrontation, and I'll add at the time the defendant was brought there for the identification, the officer's [sic] testified that they were unequivocal. In fact, the one witness even articulated that the shirt had been changed. And the time between the crime and confrontation, which in [a New Jersey state case] was 90 minutes. In this case it was about half of that. ...
>
> . . . In this case, the eyewitnesses' own recollection of the crime and of the description was exact. It was to the point and it was unequivocal and it was in their view certain, not only when they gave the description, but when they saw the defendant at Harrah's. I'm not so sure that really a Wade hearing was appropriate in this case. The fact that the defendant went there in a police car in handcuffs, I don't have – I don't have any case that that, and because of that alone, is – is such to say that it was impermissibly suggestive. ...
>
> . . . I do find a case that says that suggestiveness alone is not fatal. I think that based on a totality of the circumstances, and that is the opportunity of not one, but three eyewitnesses to give a description, to give the same description, the shortness in time

16

between time of the alleged incident and the time of
apprehension in bringing the defendant for the
identification, the certainty of them unequivocally
saying this is the person, the one witness saying but
doesn't have the white shirt on, I think all suggests
that under the totality of the circumstances herein,
that there was nothing impermissibly suggestive about
this.  This is not like a photo array.  It's not like a
line-up.  This is a – This is someone being taken right
to the scene where an incident occurred in very close
proximity as to space and time and, therefore, the
defense application to – to bar the identification is
denied.

(Ra 3T at pp. 39-41).

The Appellate Division reviewed this claim on direct appeal

and found:

We also reject the arguments asserted by defendant
in Point II that the out-of-court and in-court
identifications of defendant were impermissibly
suggestive.  The judge conducted a <u>Wade</u> hearing in
advance of trial as to the out-of-court identification.
The facts adduced at the <u>Wade</u> hearing revealed that
defendant was brought to a nearby location,
approximately twenty-five minutes after the incident in
the casino garage, so that the victims could determine
whether he was the perpetrator.  At that time, the
victims first saw defendant as he emerged from a police
car, wearing handcuffs.  Despite these circumstances,
and the fact that at least one victim was still upset
from the events in question, the judge determined that
the positive identification of defendant produced by
this show-up was not impermissibly suggestive.  We
defer to the judge's findings, and reject defendant's
contentions in this regard, substantially for the
reasons set forth in the judge's oral decision.

(Ra 8, Appellate Division opinion at p. 7) (internal citations

omitted).

Thus, the state courts correctly applied the factors

enumerated in <u>Manson</u> and <u>Mathis</u> to determine the reliability of

the challenged identifications.  The conclusion of the state courts that the out of court identifications were properly admitted, did not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**D.**   **Claim Regarding Jury Charge (Ground 4).**

In Ground Four of his petition, Petitioner argues that: "The crime for which I was convicted does not constitute robbery and the trial judge failed to instruct the jury of a lesser charge." (Petition, ¶ 12D).

As to Petitioner's first contention that his crime does not constitute robbery, a claim that the jury's verdict was against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." Douglas v. Hendricks, 236 F. Supp.2d 412, 435-36 (D.N.J. 2002)(citation omitted).  A writ should not issue unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 436 (citations omitted).

Petitioner's claim is without merit, as it concerns a matter of state law for which habeas relief is not available.  Further, as noted, the record provided to the Court in this case demonstrates overwhelming evidence against Petitioner in support of his conviction on first-degree robbery charges; Petitioner committed a theft, and in the course of doing so, threatened the victims and put them in fear of immediate bodily injury with the use of a knife.  See N.J.S.A. 2C:15-1.

As to Petitioner's second contention that the judge should have charged the jury on a lesser included offense, this claim also fails.  Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (internal citations omitted).  Thus, the Due Process Clause is violated only where

19

"the erroneous instructions have operated to lift the burden of
proof on an essential element of an offense as defined by state
law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997); see also
In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause
protects the accused against conviction except upon proof beyond
a reasonable doubt of every fact necessary to constitute the
crime with which he is charged"); Sandstrom v. Montana, 442 U.S.
510, 523 (1979) (jury instructions that suggest a jury may
convict without proving each element of a crime beyond a
reasonable doubt violate the constitutional rights of the
accused).

    Where such a constitutional error has occurred, it generally
is subject to "harmless error" analysis. See Smith, 120 F.3d at
416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f
the [federal habeas] court concludes from the record that the
error had a 'substantial and injurious effect or influence' on
the verdict, or if it is in 'grave doubt' whether that is so, the
error cannot be deemed harmless." Id. at 418 (citing California
v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged
instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge. If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972). "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498 U.S. 39, 41 (1990).

In this case, the jury instruction complies with state law, as there was no basis to charge the jury on a lesser included offense based on the facts described at trial. See State v. Choice, 98 N.J. 295, 298-99 (1985); State v. Garron, 177 N.J. 147, 180 (2003). Petitioner's conduct satisfied the elements of robbery. The trial judge charged the jury on robbery in the first degree, and informed them that if they had a reasonable doubt as to whether Petitioner was armed, or threatened the use of a deadly weapon, then they could find him guilty of second-degree robbery. If they could not find beyond a reasonable doubt each element of robbery, they must acquit. (Ra 6T at pp. 58-59). The trial judge also charged on terroristic threats. Throughout the charge, the trial judge reminded jurors that they must find

that defendant committed the crimes "beyond a reasonable doubt." Thus, this Court finds no violation of Petitioner's due process rights, and this ground for relief will be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the

denial of a constitutional right, as required by 28 U.S.C. §
2253.

An appropriate Order accompanies this Opinion.


 s/Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

Dated: July 18, 2008

At Camden, New Jersey

23